IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MARK SHEFFIELD,                )
                               )
            Plaintiff,         )
                               )
        Vs.                    )   Civil Action No. 11-961
                               )
MICHAEL J. ASTRUE,             )
COMMISSIONER OF SOCIAL         )
SECURITY,                      )

O R D E R

AND NOW, this 2nd day of January, 2013, upon consideration of Defendant's Motion for Summary Judgment (document No. 12) filed in the above-captioned matter on February 10, 2012,

IT IS HEREBY ORDERED that said Motion is DENIED.

AND, further, upon consideration of Plaintiff's Motion for Summary Judgment (document No. 10) filed in the above-captioned matter on January 11, 2012,

IT IS HEREBY ORDERED that said Motion is GRANTED in part and DENIED in part. Specifically, Plaintiff's Motion is granted to the extent that it seeks a remand to the Commissioner of Social Security ("Commissioner") for further evaluation as set forth below and denied in all other respects. Accordingly, this matter is hereby remanded to the Commissioner for further evaluation under sentence four of 42 U.S.C. § 405(g) in light of this Order.

1

## I. Background

On or around December 16, 2008, Plaintiff Mark Sheffield filed his claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. (R. 11, 51). Specifically, Plaintiff claimed that he became disabled on December 1, 2008, due to bipolar disorder and a heart condition.[1] (R. 118).

After being denied initially on March 24, 2009, Plaintiff sought, and obtained, a hearing before an Administrative Law Judge ("ALJ") on July 21, 2010. (R. 53-60, 32-50). In a decision dated August 27, 2010, the ALJ denied Plaintiff's request for benefits. (R. 11-19). The Appeals Council declined to review the ALJ's decision on May 20, 2011. (R. 1-3). On August 1, 2011, Plaintiff filed a timely appeal with this Court, and the parties have filed cross-motions for summary judgment.

## II. Standard of Review

Judicial review of a social security case is based upon the pleadings and the transcript of the record. See 42 U.S.C. § 405(g). The scope of review is limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact. See Matthews v. Apfel, 239 F.3d

---

[1] Plaintiff apparently has abandoned his claim that he has a disabling heart condition.

2

589, 592 (3d Cir. 2001) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive" (quoting 42 U.S.C. § 405(g))); Schaudeck v. Commissioner of Soc. Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999) (noting that the court has plenary review of all legal issues, and reviews the administrative law judge's findings of fact to determine whether they are supported by substantial evidence).

"Substantial evidence" is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate" to support a conclusion. Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999). However, a "single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence." Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983)). "Nor is evidence substantial if it is overwhelmed by other evidence - particularly certain types of evidence (e.g., that offered by treating physicians) - or if it really constitutes not evidence but mere conclusion." Id.

A disability is established when the claimant can demonstrate some medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period. See Fargnoli v. Massanari, 247 F.3d

3

34, 38-39 (3d Cir. 2001). "A claimant is considered unable to engage in any substantial gainful activity 'only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy ....'" Id. at 39 (quoting 42 U.S.C. § 423(d)(2)(A)).

The Social Security Administration ("SSA") has promulgated regulations incorporating a five-step sequential evaluation process for determining whether a claimant is under a disability as defined by the Act. See 20 C.F.R. § 416.920. In Step One, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. See 20 C.F.R. § 416.920(b). If so, the disability claim will be denied. See Bowen v. Yuckert, 482 U.S. 137, 140 (1987). If not, the second step of the process is to determine whether the claimant is suffering from a severe impairment. See 20 C.F.R. § 416.920(c). "An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.921(a). If the claimant fails to show that his or her impairments are "severe," he or she is ineligible for disability benefits. If the claimant does have a severe impairment, however, the Commissioner must proceed to Step Three and determine whether

the claimant's impairment meets or equals the criteria for a listed impairment. See 20 C.F.R. § 416.920(d). If a claimant meets a listing, a finding of disability is automatically directed. If the claimant does not meet a listing, the analysis proceeds to Steps Four and Five.

Step Four requires the ALJ to consider whether the claimant retains the residual functional capacity ("RFC") to perform his or her past relevant work. See 20 C.F.R. § 416.920(e). The claimant bears the burden of demonstrating an inability to return to his or her past relevant work. See Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994). If the claimant is unable to resume his or her former occupation, the evaluation moves to the fifth and final step.

At this stage, the burden of production shifts to the Commissioner, who must demonstrate that the claimant is capable of performing other available work in the national economy in order to deny a claim of disability. See 20 C.F.R. § 416.920(g). In making this determination, the ALJ should consider the claimant's RFC, age, education, and past work experience. See id. The ALJ must further analyze the cumulative effect of all the claimant's impairments in determining whether he or she is capable of performing work and is not disabled. See 20 C.F.R. § 416.923.

III. **The ALJ's Decision**

In the present case, the ALJ applied the sequential evaluation

5

process when reviewing Plaintiff's claim for benefits. In particular, the ALJ found that Plaintiff had not been engaged in substantial gainful activity since December 16, 2008, the application date. (R. 13). The ALJ also found that Plaintiff met the second requirement of the process insofar as he had the severe impairments of adjustment disorder and bipolar disorder. (Id.). The ALJ concluded that Plaintiff's impairments did not meet any of the listings that would satisfy Step Three. (R. 14-15).

The ALJ found that Plaintiff retained the RFC to perform a full range of work at all exertional levels, but with the following nonexertional limitations: He was relegated to simple, routine, repetitive tasks involving no more than incidental exercise of independent judgment or discretion and no more than incidental changes in work processes. He was further limited to no more than incidental interaction with co-workers and no interaction with the general public. He was also precluded from all exposure to hazards such as unprotected heights and dangerous machinery. In addition, he was precluded from any tasks involving reading, writing, or math for text content, message recordation, or instruction compliance. (R. 15-17). Based on this RFC, Plaintiff established that he was incapable of returning to his past employment; therefore, the ALJ moved on to Step Five. (R. 18). The ALJ then used a vocational expert ("VE") to determine whether or not there were a significant

number of jobs in the national economy that Plaintiff could perform. The VE testified that, based on Plaintiff's age, education, past relevant work experience, and RFC, Plaintiff could perform jobs - including harvest worker, produce packer, and floor waxer - that exist in significant numbers in the national economy. (R. 18, 47-48). Accordingly, the ALJ found that Plaintiff was not disabled. (R. 18-19).

## IV. Legal Analysis

Plaintiff raises several arguments as to why the ALJ erred in finding that he was not disabled. While the Court does not fully agree with the arguments set forth by Plaintiff, it does agree that remand is warranted in this case. Specifically, the Court finds that the ALJ failed to provide an adequate explanation for his treatment of the opinion of Plaintiff's treating psychiatrist, Dr. Ahmed Jahangeer, M.D., and that, therefore, the record is insufficient to support the ALJ's determination of Plaintiff's RFC and his hypothetical question to the VE. Accordingly, the Court will remand the case for further consideration.

RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Fargnoli v. Massanari, 247 F.3d 34, 40 (3d Cir. 2001). See also 20 C.F.R. § 416.945(a). Not only must an ALJ consider all relevant evidence in determining an individual's RFC, the RFC finding "must

7

'be accompanied by a clear and satisfactory explication of the basis on which it rests.'" Fargnoli, 247 F.3d at 41 (quoting Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981)). "'[A]n examiner's findings should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision.'" Id. (quoting Cotter, 642 F.2d at 705). See also SSR 96-8p, 1996 WL 374184, at *7 ("The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).").

Further, a hypothetical question to a VE must accurately portray the claimant's physical and mental impairments, although it need reflect only those impairments that are supported by the record. See Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987). "Where there exists in the record medically undisputed evidence of specific impairments not included in a hypothetical question to a vocational expert, the expert's response is not considered substantial evidence." Burns v. Barnhart, 312 F.3d 113, 123 (3d Cir. 2002).

Although the ALJ's decision was quite thorough and contained extensive discussion of Plaintiff's impairments, the ALJ's explanation of Dr. Jahangeer's opinion contained in his April 7, 2010

8

Medical Assessment of Ability to Do Work-Related Activities (Mental) was insufficient. Therein, Dr. Jahangeer found that Plaintiff had no ability to deal with the public and with work stress. He further found that Plaintiff had poor ability to engage in numerous work-related activities, including following work rules; relating to co-workers; interacting with supervisors; understanding, remembering, and carrying out complex, detailed, or even simple instructions; behaving in an emotionally stable manner; relating predictably in social situations; and demonstrating reliability. (R. 238-39). The ALJ discussed this opinion, and indicated that he had given it some weight. However, it is unclear exactly how much weight he gave to each aspect of the opinion or how he applied Dr. Jahangeer's findings to the RFC.

For instance, the ALJ did include, in the RFC, the limitation that Plaintiff not have any contact with the public, which would appear to be consistent with Dr. Jahangeer's opinion. However, the ALJ also found that Plaintiff could perform simple, routine, repetitive tasks, even though Dr. Jahangeer opined that Plaintiff has poor ability to understand, remember, and carry out simple job instructions. The ALJ did not specifically address Plaintiff's limitations dealing with work stress, even though Dr. Jahangeer opined that he had no ability to do so, nor did the ALJ include any limitations in the RFC regarding Plaintiff's ability to follow work

9

rules, even though the psychiatrist found that his ability to do so was poor.[2] It may be that the ALJ felt that the limitations he included in the RFC took into account all of Dr. Jahangeer's findings, even those not directly discussed in the ALJ's decision. However, it may be that the ALJ was rejecting some parts of the psychiatrist's opinion but accepting other parts. His statement that he was giving Dr. Jahangeer's opinion "some" weight leaves open many possibilities, and the Court would be forced to apply its own rationale in determining whether the psychiatrist's opinion was properly treated. Since the Court cannot do this,[3] remand for further discussion is warranted.

The Court further notes that the lack of clarity regarding Dr. Jahangeer's opinion is even more significant given that Dr. Jahangeer was Plaintiff's treating psychiatrist. When assessing a claimant's application for benefits, the opinion of the claimant's treating physician is to be afforded significant weight. See Fargnoli, 247 F.3d at 43; Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999)(citing

---

[2] The closest the ALJ came to addressing Plaintiff's ability to follow work rules was by including the limitation that Plaintiff was precluded from any tasks involving reading, writing, or math for instruction compliance.

[3] It is well-established that the Court is not permitted to wander outside of the boundaries created by the ALJ's opinion in reviewing that opinion. See Fargnoli, 247 F.3d at 44 n.7 ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.")(quoting SEC v. Chenery Corporation, 318 U.S. 80, 87 (1943)).

20 C.F.R. § 404.1527). In fact, the regulations provide that a treating physician's opinion is to be given "controlling weight" so long as the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record. 20 C.F.R. § 416.927(c)(2); Fargnoli, 247 F.3d at 43; Plummer, 186 F.3d at 429. As a result, the Commissioner may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, and not on the basis of the Commissioner's own judgment or speculation, although he may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided. See Plummer, 186 F.3d at 429.

The opinions of treating physicians are given greater deference because these doctors are "employed to cure and ha[ve] a greater opportunity to know and observe the patient as an individual." Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987). This is especially true "when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." Plummer, 186 F.3d at 429 (citing Rocco v. Heckler, 826 F.2d 1348, 1350 (3d Cir. 1987)). In fact, the applicable regulations acknowledge the special ability of a treating physician when assessing a claimant's condition and provide as follows:

> [treating physicians] are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. § 416.927(c)(2).

In short, an ALJ may not reject a treating physician's opinion based on his or her own credibility judgments, speculation, or lay opinion. See Plummer, 186 F.3d at 429. Rather, the ALJ must provide specific and legitimate reasons for doing so. Fargnoli, 247 F.3d at 43. Because it is unclear whether the ALJ meant to reject portions of Dr. Jahangeer's opinion, and if so, what the basis was for the rejection, the Court must remand the case for further explanation.

The ALJ is not necessarily obligated to accept any of the limitations found by Dr. Jahangeer, but he must adequately discuss the basis for rejecting them if that is what he chooses to do. The Court expresses no opinion as to whether the ALJ's RFC determination and hypothetical *could* be supported by the record. It is the need for further explanation that mandates the remand in this case.[4]

---

[4] To the extent that Plaintiff asks this Court to reverse the ALJ's decision and award benefits, the record simply does not allow the Court to do so. The Court cannot find that substantial evidence in the record as a whole indicates that Plaintiff is disabled

12

## V. Conclusion

In short, the record simply does not permit the Court to determine whether the ALJ afforded proper weight to Dr. Jahangeer's opinion and whether the ALJ's determination of Plaintiff's RFC and his hypothetical question to the VE are supported by substantial evidence, and, accordingly, the Court finds that substantial evidence does not support the ALJ's decision in this case. The Court hereby remands this case to the Commissioner for reconsideration consistent with this Order.

s/Alan N. Bloch
United States District Judge

ecf: Counsel of record

---

and entitled to benefits. See Podedworny v. Harris, 745 F.2d 210, 221-22 (3d Cir. 1984).